[Cite as *State v. Carroll*, 2016-Ohio-374.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | Case No. 15CA3485 |
| Plaintiff-Appellee, | : | |
| v. | : | DECISION AND JUDGMENT ENTRY |
| SIR JEFFREY SCOTT CARROLL, | : | |
| Defendant-Appellant. | : | RELEASED: 02/02/2016 |

APPEARANCES:

Eric J. Hoffman, Columbus, Ohio, for appellant.

Matthew S. Schmidt, Ross County Prosecuting Attorney, and Pamela C. Wells, Ross County Assistant Prosecuting Attorney, Chillicothe, Ohio, for appellee.

Hoover, J.

{¶1}    Following a trial, a jury convicted Sir Jeffrey Scott Carroll of possession of cocaine in an amount equal to or exceeding 20 grams but less than 27 grams in violation of R.C. 2925.11, a felony of the second degree, and the trial court sentenced him to a mandatory prison term of five years.

{¶2}    On appeal, defendant-appellant, Sir Jeffrey Scott Carroll ("Carroll") asserts in his sole assignment of error that his conviction is not supported by sufficient evidence and is against the manifest weight of the evidence. He first contends that the state failed to prove that he possessed cocaine. The state introduced a videotape of Carroll backing into a parking spot at a hotel. The video showed Carroll getting out of his car, opening his trunk, and rummaging through the trunk. Next, it shows Carroll bending down and moving his hands around the gravel-covered landscaping near a small bush towards the rear of the vehicle. Carroll later got back into

the car and drove away with his girlfriend. Then a few minutes later, Carroll returned and backed his car into the same parking spot. After the police were called, Carroll and his girlfriend left at the request of the hotel employee. A hotel clerk noticed that some gravel had been disturbed in the area around where Carroll had appeared to place his hands. The police searched the area around where Carroll had been seen reaching around and found a pill bottle containing 56 plastic baggies of an off-white substance that was later tested to be cocaine. The testimony of the hotel clerk and one of the police officers who responded to the scene corroborated what the surveillance video showed. Based on this evidence, the jury did not clearly lose its way or create a manifest miscarriage of justice in finding that the state had proven the essential elements of the crime of possession of cocaine beyond a reasonable doubt.

{¶3}    Carroll next contends that the jury's finding that he possessed at least 20 grams but less than 27 grams of cocaine so as to support his second-degree felony conviction is not supported by sufficient evidence and is against the manifest weight of the evidence. Carroll argues that the state failed to provide adequate proof that he possessed the requisite amount of cocaine. We reject Carroll's challenge to the hypergeometric sampling method employed by the state and his contention that the state needed to test every drug unit to support a conviction. Courts have accepted this method of testing and determined that it is sufficient as a matter of law to support a determination that the entire substance recovered together and similarly packaged is the same controlled substance as that tested. The jury did not clearly lose its way or create a manifest miscarriage of justice in finding that the state had proven that Carroll possessed at least 20 grams but less than 27 grams of cocaine.

{¶4}    Therefore, we overrule Carroll's sole assignment of error and affirm his conviction and sentence.

## I. Facts and Procedural Posture

{¶5}     In February 2014, the Ross County Grand Jury returned a secret indictment charging Carroll with one count of possession of cocaine in an amount equal to or exceeding 20 grams, but less than 27 grams, in violation of R.C. 2925.11, a felony of the second degree.[1] Carroll entered a plea of not guilty to the charge, and a jury trial was conducted at which the following evidence was adduced.

{¶6}     In the early morning hours of November 28, 2013, Best Western hotel clerk Amanda Berry observed on the hotel's security camera feed a gray Chevrolet Impala back into a parking space in a side parking lot of the hotel and sit there for several minutes. The state introduced a recording of the videotape from the security camera into evidence, and it established that the car backed into the parking spot at the hotel and that Carroll, the driver, got out of the car a couple minutes later. Carroll went to the back of the car, opened the trunk, and leaned over with his right hand towards the landscaped ground behind the parking spot. Carroll then went back to the trunk and spent several seconds rummaging through the inside of it. He then bent down to the ground behind the car and appeared to place both hands on the ground. Carroll got back up, closed the trunk, and got back in the driver side of the car. Over nine minutes later, Carroll pulled out of the parking space and left. Berry came out and looked at the area that the driver had been around.

{¶7}     After over five minutes had elapsed, Carroll returned in the same car and backed into the same spot on the side of the hotel. Over seven minutes later, Carroll left the car and went to the locked side door of the hotel. The police arrived and talked to Carroll and his passenger, Cherrice Nimmons. Over five minutes later, after one of the officers talked with Carroll when he

---

[1] The indictment referred to the defendant as Jeffrey Scott Carroll, but at trial, the indictment was amended to refer to the defendant by his proper full name of Sir Jeffrey Scott Carroll.

got back in the car, Carroll and Nimmons drove away. The police then investigated the area where Carroll had bent down and disturbed the gravel in the landscaped area near the parking space.

{¶8}     The state's witnesses filled in the context of what was exhibited on the videotape. Berry testified that when she observed Carroll reach into the trunk of the car and then reach for the ground on the security camera, she went to the locked security door that overlooked the parking lot, which was on the opposite end of the hotel from the lobby. She took the license number of the Impala and started to call the police because of what she considered to be suspicious behavior by Carroll; but she stopped the call when she saw the Impala leave. After the vehicle left, she went outside and saw that some of the gravel had been disturbed where Carroll had bent down after rummaging through the trunk of the car, but she returned to the front desk of the hotel because she did not see anything out of place.

{¶9}     Berry further testified that several minutes later, when she observed the same Impala back into the same parking spot, she called the police and relayed that the car had been acting suspiciously previously, had left, and had returned. Chillicothe Police Officer Randy Pratt testified that he was dispatched to the hotel. When he arrived, he observed Carroll, the driver of the Impala, near the locked door at the side of the hotel. Officer Pratt and another officer obtained the names of Carroll and his passenger, Nimmons. Carroll told him that they were there because they were thinking about getting a room at the hotel. Officer Pratt then went inside and talked to Berry, who told him that she wanted them to leave the property. Officer Pratt then advised Carroll that the clerk wanted him to leave the hotel; and Carroll and Nimmons drove away.

{¶10}   Officer Pratt returned to the hotel, where Berry asked him if he had noticed anything about the landscaping in the area where Carroll had parked the Impala. According to Officer Pratt, Berry told him that Carroll had been digging around the gravel near a bush in that area. Berry showed him part of the videotape. Officer Pratt testified that the person on the videotape who had backed the car onto the property, went to his trunk, and then reached for the ground was Carroll. Officer Pratt then investigated the same area and discovered a pill bottle underneath the disturbed gravel. Inside the bottle were 56 individually wrapped baggies of suspected cocaine. The pill bottle was located in front of a small bush directly behind where the Impala Carroll had driven had been parked by him. Officer Pratt opined that Carroll had dropped off drugs for someone else to pick up.

{¶11}   The Chillicothe Police submitted the pill bottle and its contents for testing to the Ohio Bureau of Identification and Investigation ("BCI"). Stanton Wheasler, a forensic scientist in BCI's drug chemistry section, testified that he analyzed the submitted evidence for the presence of controlled substances. The parties stipulated that Wheasler was an expert in the field of chemistry and drug analysis. Wheasler determined that the pill bottle contained 56 baggies containing an off-white solid substance, and he determined that the total weight of the substance was 21.31 grams +/- .08 gram. Based on his tests, Wheasler concluded within a reasonable degree of scientific certainty that the 56 plastic baggies contained cocaine.

{¶12}   Wheasler employed the statistical method of hypergeometric sampling to determine how many units to test from the multi-unit sample. This method was first recommended in a 1991 paper. BCI has used this method since before Wheasler started working for it in 2010. Hypergeometric sampling is used because it is impossible to test all units in every case given the high volume of cases in which testing for controlled substances is required. Based

on this method, Wheasler tested 21 of the 56 units submitted by the Chillicothe Police Department. All 21 of these units tested positive for cocaine. Wheasler concluded that this result established a 95% confidence level that at least 90% of the units in the 56-unit sample were cocaine. He admitted that to achieve 100% certainty, he would have had to test all of the units and that he did not know the weight of the 21 units he tested.

{¶13}   Nimmons was the solitary witness who testified on behalf of Carroll. She testified that she was Carroll's girlfriend. On the date in question, she had eaten dinner with Carroll at a Chinese restaurant near the hotel and then proceeded to smoke marijuana in the Impala. They saw a guy over by the gravel part of the area beside the hotel walking around doing something. They then continued smoking marijuana and headed over to the hotel. Carroll backed the car near the area in which they saw the man. Then he got out of the car to check the area; but he did not see anything. She testified that she remembered that Carroll opened the trunk of the car, but first stated that she did not know why he did. On cross-examination, Nimmons testified that Carroll opened the trunk before checking the area where the man had been to have a story if the man returned. They then decided to smoke the rest of the marijuana before they got a room at the hotel so they took off and went to a gas station. They returned a few minutes later; and Carroll got out of the car when he saw the police arriving.

{¶14}   According to the prior testimony of Berry, Carroll and Nimmons never requested a room at the hotel on that date; and the parking spot they chose was on the opposite side of the hotel from the lobby. Officer Pratt testified that neither Carroll nor Nimmons told him anything about a man walking in the area near where they parked.

{¶15}   The jury returned a verdict finding Carroll guilty of possession of cocaine in an amount equal to or exceeding 20 grams, but less than 27 grams. The trial court sentenced Carroll

to a mandatory five-year prison term, imposed a three-year period of postrelease control, suspended his driver's license for six months, and fined him $7,500. This appeal ensued.

## II. Assignment of Error

{¶16}  Carroll assigns the following error for our review:

THE TRIAL COURT DID ERR WHEN IT ENTERED JUDGMENT AGAINST THE DEFENDANT WHEN THE EVIDENCE WAS INSUFFICIENT TO SUSTAIN A CONVICTION AND WAS NOT SUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE.

## III. Standard of Review

{¶17}  In his sole assignment of error, Carroll asserts that the trial court erred in entering judgment against him because the evidence was insufficient to sustain his conviction for possession of cocaine and was against the manifest weight of the evidence.

{¶18}  "When a court reviews a record for sufficiency, '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Maxwell*, 139 Ohio St.3d 12, 2014–Ohio–1019, 9 N.E.3d 930, ¶ 146, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus; *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L .Ed.2d 560 (1979). The court must defer to the trier of fact on questions of credibility and the weight assigned to the evidence. *State v. Kirkland*, 140 Ohio St.3d 73, 2014–Ohio–1966, 15 N.E.3d 818, ¶ 132.

{¶19}  In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable

inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997); *State v. Hunter*, 131 Ohio St.3d 67, 2011–Ohio–6254, 960 N.E.2d 955, ¶ 119.

{¶20} "Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence." *Thompkins* at 387.

{¶21} But the weight and credibility of evidence are to be determined by the trier of fact. *Kirkland* at ¶ 132. "A jury, sitting as the trier of fact, is free to believe all, part or none of the testimony of any witness who appears before it." *State v. West,* 4th Dist. Scioto No. 12CA3507, 2014–Ohio–1941, ¶ 23. We defer to the trier of fact on these evidentiary weight and credibility issues because it is in the best position to gauge the witnesses' demeanor, gestures, and voice inflections, and to use these observations to weigh their credibility. *Id.* With the foregoing standards guiding our analysis, we now address the merits of Carroll's assignment of error.

### IV. Law and Analysis

### A. Possession of Cocaine

{¶22} The jury convicted Carroll of possession of cocaine in violation of R.C. 2925.11(A), which provides that "[n]o person shall knowingly * * * possess * * * a controlled substance or a controlled substance analog." "If the drug involved in the violation is cocaine or a compound, mixture, preparation, or substance containing cocaine, whoever violates division (A) of this section is guilty of possession of cocaine." R.C. 2925.11(C)(4).

{¶23}  Carroll first contends that the state failed to prove that he possessed cocaine and that the jury's verdict was against the manifest weight of the evidence.

{¶24}  "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B). "[P]ossession" is defined as "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K). "Possession may be actual or constructive." *State v. Moon*, 4th Dist. Adams No. 08CA875, 2009–Ohio–4830, ¶ 19, citing *State v. Butler*, 42 Ohio St.3d 174, 175, 538 N.E.2d 98 (1989) ("[t]o constitute possession, it is sufficient that the defendant has constructive possession").

{¶25}  " 'Actual possession exists when the circumstances indicate that an individual has or had an item within his immediate physical possession.' " *State v. Kingsland*, 177 Ohio App.3d 655, 2008–Ohio–4148, 895 N.E.2d 633, ¶ 13 (4th Dist.), quoting *State v. Fry*, 4th Dist. Jackson No. 03CA26, 2004–Ohio–5747, ¶ 39. "Constructive possession exists when an individual knowingly exercises dominion and control over an object, even though that object may not be within his immediate physical possession." *State v. Hankerson*, 70 Ohio St.2d 87, 434 N.E.2d 1362 (1982), syllabus; *State v. Brown*, 4th Dist. Athens No. 09CA3, 2009–Ohio–5390, ¶ 19. For constructive possession to exist, the state must show that the defendant was conscious of the object's presence. *Hankerson* at 91; *Kingsland* at ¶ 13. Both dominion and control, and whether a person was conscious of the object's presence may be established through circumstantial evidence. *Brown* at ¶ 19. "Moreover, two or more persons may have joint constructive possession of the same object." *Id.*

{¶26} The state introduced evidence that Carroll was in actual possession of the pill bottle containing the 56 baggies of cocaine. The videotape from one of the hotel security cameras showed Carroll backing into a parking spot at the hotel, getting out of the car, opening his trunk, rummaging through his trunk, and then bending down and moving his hands around the gravel-covered landscaping near a small bush adjacent to the rear of the car. After Carroll drove away the first time, Berry checked the area and noticed that some of the gravel had been disturbed in the area in which Carroll had appeared to place his hands. Then a few minutes later, Carroll returned and backed his car into the same parking spot. The testimony of Berry and Officer Pratt corroborated and provided context for the videotape. After Carroll left at the request of Berry and the police, Officer Pratt investigated the same area in which Carroll had been reaching around the ground and found the pill bottle containing the 56 baggies of cocaine. He opined that Carroll had dropped off the drugs for someone else to pick up.

{¶27} By contrast, Carroll's sole witness, his girlfriend, Nimmons, provided testimony that was not credible. She claimed that they parked in the spot near the area where the pill bottle was located because of the suspicious behavior of an unknown man, who they did not tell the police about. There would have been no reason to park in the same spot when they returned to the hotel if—as she reasoned—Carroll had already checked the area in which the man had been exhibiting suspicious behavior. If they wanted to get a room at the hotel, it is unlikely that they would have parked on the opposite end of the hotel from the lobby. Furthermore, she initially did not have any explanation for why Carroll would have opened the car trunk before he checked the area near the small bush.

{¶28} Based on the extensive, credible evidence introduced at trial by the state, the jury properly found beyond a reasonable doubt that Carroll possessed cocaine and did not clearly lose

its way or create a manifest miscarriage of justice so as to warrant a reversal. We reject Carroll's first contention.

## B. Amount of Cocaine

{¶29} The jury determined that Carroll had possessed cocaine in an amount equal to or exceeding 20 grams, but less than 27 grams. The possession of this amount of cocaine results in punishment for a second-degree felony. R.C. 2925.11(C)(4)(d).

{¶30} Carroll contends that the state failed to provide adequate proof that he was in possession of that or any specific amount of cocaine; thus, he should have been convicted of an unspecified amount of cocaine, which would have subjected him to punishment for a fifth-degree felony offense of cocaine possession. R.C. 2925.11(C)(4)(a). He relies on the testimony of the state's expert, BCI forensic scientist Wheasler, who observed on cross-examination that the only way to be 100% certain that all of the 56 units contained cocaine would be to test them all, and he tested only 21 of the 56 units. Further, Wheasler did not weigh the 21 units that tested positive for cocaine.

{¶31} In essence, Carroll challenges the hypergeometric sampling method employed by BCI because he asserts that the state must test every unit in every drug case to render an appropriate conclusion regarding the weight of the controlled substance.

{¶32} We reject Carroll's contention. Appellate courts that have addressed this issue have accepted the hypergeometric or random sampling method of testing and determined that evidence of this method is sufficient as a matter of law to support a determination that the entire substance recovered together and similarly packaged is the same controlled substance as that tested. *See generally State v. Gartrell*, 2014-Ohio-5203, 24 N.E.3d 680, ¶ 96 (3rd Dist.), and

cases cited therein; *see also State v. Edwards*, 10th Dist. Franklin No. 12AP-992, 2013-Ohio-4342, ¶ 40; *State v. Mitchell*, 8th Dist. Cuyahoga No. 93076, 2010-Ohio-520, ¶ 12.

{¶33}   Although the Supreme Court of Ohio has not directly addressed this issue, other state supreme courts have similarly concluded that " 'random testing is permissible when the seized samples are sufficiently homogenous so that one may infer beyond a reasonable doubt that the untested samples contain the same substance as those that are conclusively tested.' "[2] (Citation omitted.) *See State v. Garnett*, 9th Dist. Medina No. 12CA0088-M, 2013-Ohio-4971, ¶ 13 (Belfance, J. concurring), quoting *People v. Jones*, 174 Ill.2d 427, 429, 675 N.E.2d 99 (1996); *see also* Annotation, *Sufficiency of Random Sampling of Drug or Contraband to Establish Jurisdictional Amount Required for Conviction*, 45 A.L.R.5th 1, Section 2[a] (1997) ("As a general rule, courts agree that random sampling of a homogenous substance is sufficient to establish the jurisdictional amount required by conviction").

{¶34}   Therefore, Wheasler's uncontroverted testimony as a stipulated expert witness that he could conclude within a reasonable degree of scientific certainty that the 56 plastic baggies in the pill bottle contained cocaine was sufficient to support the jury verdict. That is, his conclusion based on hypergeometric sampling that he had a 95% confidence level that at least 90% of the units in the 56-unit sample were cocaine was sufficient to establish that the 21.31 grams of off-white substance in the baggies was cocaine. *See Gartrell* at ¶ 97-101 (rejecting the appellant's contention in that case that similar testimony concerning the reliability of hypergeometric or random sampling rendered the evidence insufficient or against the manifest weight of the evidence). Significantly, Carroll did not present the testimony of any expert

---

[2] Carroll does not argue that the 56 baggies of off-white substance were not sufficiently homogenous to apply the hypergeometric or random sampling method of statistical analysis to the 56-unit sample.

witness to attack the testimony or methods used by the state's expert whose qualifications he had stipulated.

{¶35}   Therefore, the jury did not clearly lose its way or create a manifest miscarriage of justice by finding that the state had proven that Carroll possessed at least 20 grams but less than 27 grams of cocaine. We overrule Carroll's assignment of error.

## V. Conclusion

{¶36}   Carroll's conviction for the possession of cocaine, a second-degree felony, is supported by sufficient evidence and is not against the manifest weight of the evidence. Having overruled Carroll's sole assignment of error, we affirm the judgment of the trial court.

JUDGMENT AFFIRMED.

**<u>JUDGMENT ENTRY</u>**

It is ordered that the JUDGMENT IS AFFIRMED and that Appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Ross County Court of Common Pleas to carry this judgment into execution.

<u>IF</u> A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted.  The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court.  If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J.: Concurs in Judgment and Opinion.
McFarland, J.: Concurs in Judgment Only.

For the Court

BY: _____
        Marie Hoover, Judge


**NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**