[Cite as *State v. Dodson*, 2019-Ohio-1465.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | | Case No. 18CA3629 |
| Plaintiff-Appellee, | : | |
| | | |
| v. | : | DECISION AND JUDGMENT ENTRY |
| | | |
| ROBERT L. DODSON, JR., | : | |
| | | |
| Defendant-Appellant. | : | **RELEASED: 04/10/2019** |

APPEARANCES:

Christina Madriguera, Assistant State Public Defender, Columbus, Ohio for appellant.

Matthew Schmidt, Ross County Prosecuting Attorney, and Pamela Wells, Ross County Assistant Prosecuting Attorney, Chillicothe, Ohio for appellee.

Hess, J.

**{¶1}** A jury found Robert L. Dodson, Jr. guilty of illegal conveyance of drugs onto the grounds of a detention facility. The trial court sentenced him to a twenty-four- month prison term.

**{¶2}** Dodson argues that his conviction is not supported by sufficient evidence because he was not caught or observed with the drugs and his DNA was not found on the package containing the drugs. However, the state introduced evidence that Dodson was at the Chillicothe Correctional Institution (CCI) garage next to the truck where the drugs were found, he gave officers a questionable reason for being there, and he had an earlier recorded telephone conversation with an inmate at CCI in which the two discussed Dodson making a delivery after dark to a place that fit the description of the CCI garage. Proof of Dodson's guilt may be made by circumstantial evidence as well as by direct or testimonial evidence and the jury is to give circumstantial and direct evidence

equal probative value. We find that the state presented sufficient evidence that Dodson was the source of the illegal drugs, overrule his assignment of error, and affirm his conviction.

## I. FACTS

**{¶3}** Dodson was charged with illegal conveyance of drugs onto a detention facility in violation of R.C. 2921.36, a third-degree felony. (OR 1) Dodson pleaded not guilty and the matter proceeding to trial, which produced the following evidence. (Arr. Tr. p.2) (Dec. 12, 2017 Trans.)

**{¶4}** CCI Officers Terry Deck and Michael Wilson were patrolling CCI grounds on the evening of December 1, 2016. (Tr. 32- 33, 50-51) They saw Dodson walking in front of a box truck parked at the CCI garage and drove over to investigate. (Stipulation Tr. 32, 36, 51) Dodson was wearing black pants and a black hoodie pulled up over his hat and was acting nervous. (Tr. 36-37) Officer Wilson testified that he asked Dodson what was going on and he replied, "Nothing." He then asked Dodson what he was doing there and Dodson said, "He was looking for a girlfriend's house." (Tr. 44) The officers and Dodson were about twenty to twenty-five yards from the box truck during their brief encounter. (Tr. 52, 54)

**{¶5}** Dodson then continued to walk west away from the CCI garage. Officer Wilson stayed at the CCI garage to search the grounds by the box truck where Dodson was walking while Officer Deck drove in the direction Dodson was walking. (tr 54) Officer Deck observed Dodson get into the passenger side of a vehicle that was parked along Pleasant Valley Road. Officer Deck followed the vehicle until he was able to obtain the

license plate number, and then he returned to the CCI garage to rejoin Officer Wilson. (Tr. 37-39)

{¶6} Officer Wilson searched the area around the CCI garage and the box truck, which was a poorly lit, very dark area. (tr. 54) He found an object near the box truck approximately four to five inches long wrapped in electrical tape called a "plug." (Tr. 55, 70) The plug had no indications that it had been there for a long period of time and had no moisture or dew accumulation. (Tr. 55) Later in the investigation law enforcement opened the plug and determined that it contained 56 separate baggies of methamphetamine. (Tr. 73-75, 82-88,105-112, Exs. 4 & 7)

{¶7} State Trooper Sherry Wells conducted further investigation and determined that the vehicle that Dodson rode away in was registered in Franklin County and belong to Dodson's girlfriend. Wells also determined that Dodson lived in Columbus, Ohio. She obtained Dodson's DNA and fingerprints and sent them to the Ohio Bureau of Criminal Investigation (BCI). (Tr. 91 - 96) BCI performed a subsequent DNA analysis of segments of electrical tape from the plug and the plastic baggies, but it was not possible to develop an adequate DNA comparison profile so a comparison could not be performed. (Tr. 127-129)

{¶8} Trooper Wells also discovered Dodson's telephone number, which allowed prison officials to recover a recorded telephone call from an inmate at CCI to Dodson on October 2, 2016. (Stipulation, Tr. p. 81, 97) Because Trooper Wells interviewed Dodson, she was able to identify his voice as the person on the phone with the inmate. Wells testified that the CCI garage is visible from the prison and is a yellow building with white garage doors and brown trim around the roof. Wells testified that CCI is a detention

facility and the CCI garage where the drugs were found is part of the CCI detention facility grounds. (Tr. 96-97, 149)

{¶9}    In the recorded telephone call, the inmate describes a place he wants Dodson to come to during "moonlight" – a place called "the grocery store" that is "yellow with white doors and a brown roof." The inmate describes the location saying, "it's behind that one thing, next to the uh, tractor, know what I mean?" Dodson asks, "You say it's behind the tractor?"  The inmate says, "It's right next to, it's right next to the truck, yellow, yellow." The inmate goes on with further description, "It's yellow with the white doors.* * *  It's right behind the place, it's right behind the grocery store * * * grocery store got white doors, it's yellow with white doors, brown roof. You know what I mean. You might to wait 'til umm, get your Trayvon Martin on, you know what I'm saying, wait until the moonlight hits." Dodson replies, "* * * It ain't going to be there today because my work schedule is fucked up." The inmate responds, "Oh yeah. *  * * so wait for the night *  * * yeah, the grocery store yellow with brown roof, you know what I'm saying, right next to it, it's called the backhoe, you know what I mean?"  Dodson response, "* * * my schedule is fucked up."  The inmate asks, "* * * when's that?" Dodson replies that he needs sleep. The inmate asks "We in the same spot? *  *  * I said are we in the same spot? We eye to eye? * * * yeah, moonlight, Trayvon Martin baby, you know what I mean?" Dodson asks, "You going to take care of the whole thing?" The inmate responds, "The thing is it's, it's, it's me and * * * it's coming from two different places * * *."  The inmate asks, "We in the same spot, though?" Dodson responds, "We have to be based upon uh, based upon * * * ." The inmate states, "It'd be beautiful too, if it was, you know what I mean, tonight, you

know what I mean." Dodson responds, "It can't be though, can't be * * * twelve hours * * * beat." The inmate says, "Ok, alright, I'll get with you, I'll call you." (State's Ex 10)

{¶10} The jury found Dodson guilty of illegal conveyance of drugs onto the grounds of a detention facility and the trial court sentenced Dodson to a twenty-four-month prison term.

## II. ASSIGNMENT OF ERROR

1.  MR. DODSON'S CONVICTION FOR ILLEGAL CONVEYANCE OF DRUGS ONTO THE GROUNDS OF A DETENTION FACILITY IN VIOLATION OF R.C. 2921.36 IS NOT SUPPORTED BY SUFFICIENT EVIDENCE. JANUARY 23, 2018 JUDGMENT ENTRY SENTENCE.

## III. LAW AND ANALYSIS

### A.    Sufficiency of the Evidence

### 1. Standard of Review

{¶11} "When a court reviews the record for sufficiency, '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Maxwell*, 139 Ohio St.3d 12, 9 N.E.3d 930, 2014-Ohio-1019, ¶ 146 quoting *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus; *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). A sufficiency assignment of error challenges the legal adequacy of the state's prima facie case, not its rational persuasiveness. *State v. Koon,* 4th Dist. Hocking No. 15CA17, 2016-Ohio-416, ¶ 17. "That limited review does not intrude on the jury's role 'to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.' " *Musacchio v. United States*, ––– U.S. ––––, 136 S.Ct. 709, 715, 193 L.Ed.2d 639 (2016), quoting *Jackson* at 319,

443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560; *State v. Phillips*, 4th Dist. Scioto No. 18CA3832, 2018-Ohio-5432, ¶ 22-23. A reviewing court is not to assess "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *State v. Thompkins*, 78 Ohio St.3d 380, 390, 678 N.E.2d 541 (1997) (Cook, J., concurring).

{¶12} Dodson was convicted of one count of illegal conveyance of drugs onto the grounds of a detention facility in violation of R.C. 2921.36, which provides:

> (A) No person shall knowingly convey, or attempt to convey, onto the grounds of a detention facility * * * any of the following items:
> * * *
> (2) An drug of abuse, as defined in section 3719.011 of the Revised Code;
> (G)(2) Whoever violates division (A)(2) of this section * * * involving any drug of abuse is guilty of illegal conveyance of drugs of abuse onto the grounds of a detention facility * * *, a felony of the third degree.

{¶13} The three elements of illegal conveyance of drugs onto the grounds of a detention facility are: (1) knowingly conveying or attempting to convey; (2) a drug of abuse; and (3) onto the grounds of a detention facility. The state's evidence indisputably established that the CCI garage was on the grounds of a detention facility and the drugs found there were methamphetamine, a drug of abuse. Dodson does not contest the state's evidence on these two elements. Rather, Dodson's argument focuses on the third element: that he knowingly conveyed or attempted to convey. He argues that the case against him was entirely circumstantial and contends that there was no direct evidence of him placing the packaged drugs at the CCI garage and the recorded telephone call was insufficient to establish that he did it. However, "a defendant may be convicted solely on the basis of circumstantial evidence." *State v. Meddock*, 2017-Ohio-4414, 93 N.E.3d 43, ¶54 (4th Dist.) citing *State v. Nicely,* 39 Ohio St.3d at 151, 529 N.E.2d 1236 (1988).

"Circumstantial evidence and direct evidence inherently possess the same probating value." *Jenks,* paragraph one of the syllabus. "Circumstantial evidence is '[t]estimony not based on actual personal knowledge or observation of the facts in controversy, but of other facts from which deductions are drawn, showing indirectly the facts sought to be proved.' " *Nicely* at 150, quoting Black's Law Dictionary (5 Ed.1979) 221; *Meddock* at ¶ 55.

**{¶14}** The jury had the following direct and circumstantial evidence to consider. The CCI garage is part of the CCI detention facility and a four to five-inch taped "plug" containing 56 baggies of methamphetamine was found in front of a box truck parked there. The plug had no indications that it had been there for a long period of time and had no moisture or dew accumulation. Immediately before officers found the plug, Dodson was at the CCI garage in the area in front of the box truck after dark doing "nothing." Dodson's excuse for why he was out at the CCI garage alone after dark was that he was "looking for a girlfriend's house". Dodson was dressed fully in black with a black "hoodie" pulled up over his hat. After he left the garage area, Dodson walked to Pleasant Valley Road and got into the passenger side of his girlfriend's vehicle that was parked there waiting. Dodson lived in Columbus, Ohio and approximately two months before Dodson was observed at the CCI garage, he had a telephone conversation with a CCI inmate who described a building that fit the description of the CCI garage (yellow with white doors and brown roof). The inmate asked Dodson to come there near the truck after dark with his "Trayvon Martin on"[1] but Dodson told the inmate he could not be there that night because of his work schedule and the inmate said he would call Dodson back.

---

[1] Trayvon Martin was a 17-year-old black male fatally shot in 2012 while wearing a hooded sweatshirt, sparking "hoodie" protests and marches. *See The Hoodie Becomes Culture War Flashpoint*, The Wall

{¶15} Here, the evidence regarding the material element of "conveyance" is primarily circumstantial. However, "[D]irect evidence of a fact is not required. Circumstantial evidence * * * may * * * be more certain, satisfying, and persuasive than direct evidence." *State v. Deckard*, 2017-Ohio-8469, 100 N.E.3d 53, ¶45 (4th Dist.); *State v. Carroll,* 2016-Ohio-374, 47 N.E.3d 198, ¶ 26-28 (defendant seen in a parking lot rummaging his hand in gravel was found in possession of cocaine that was discovered there later that night by law enforcement); *State v. Grube,* 2013-Ohio-692, 987 N.E.2d 287, ¶ 30 (4th Dist.); *State v. Lott*, 51 Ohio St.3d 160, 555 N.E.2d 293 (1990). While the evidence of Dodson's "conveyance" is circumstantial, we find the evidence, if believed, reasonably supports a finding of guilty beyond a reasonable doubt.

{¶16} Based on this evidence, any rational trier of fact could have found that Dodson placed the drugs on the ground by the truck. The jury could reasonably infer that Dodson was out at the CCI garage after dark based on his prior telephone conversation with an inmate who had had given Dodson a description of the garage and told him to go there after dark. The jury could also reasonable infer that Dodson left the drugs on the ground by the box truck based on the fact that they were found there immediately after Dodson had walked through the area and the plug had no moisture, dew or other appearance of having been there for a long period of time. The jury could discredit Dodson's statement that nothing was going on and he was at the garage to see a girl. Thus, we conclude that the state produced sufficient evidence that would convince the average mind beyond a reasonable doubt that Dodson knowingly conveyed a drug of abuse onto the grounds of a detention facility.

---

Street Journal, Mar. 28, 2012, https://blogs.wsj.com/speakeasy/2012/03/28/the-hoodie-becomes-culture-war-flashpoint/

{¶17} We overrule Dodson's assignment of error.

## IV. CONCLUSION

{¶18} Having overruled Dodson's sole assignment of error, we affirm his conviction and sentence.

JUDGMENT AFFIRMED.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT IS AFFIRMED and that Appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Ross County Court of Common Pleas to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, P.J. & McFarland, J.: Concur in Judgment and Opinion.

For the Court

BY: _____
        Michael D. Hess, Judge

## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**