[Cite as *State v. Dettwiller*, 2022-Ohio-134.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HIGHLAND COUNTY

| | | |
|---|---|---|
| State of Ohio, | : | Case No. 21CA10 |
| Plaintiff-Appellee, | : | <u>DECISION AND</u> <u>JUDGMENT ENTRY</u> |
| v. | : | |
| Joshua J.J. Dettwiller, | : | **RELEASED 1/13/2022** |
| Defendant-Appellant. | : | |

_____
<u>APPEARANCES</u>:

Bryan Scott Hicks, Lebanon, Ohio, for appellant.

Anneka P. Collins, Highland County Prosecutor, and Adam J. King, Assistant Highland County Prosecutor, Hillsboro, Ohio, for appellee.
_____
Hess, J.

**{¶1}** Joshua J.J. Dettwiller appeals his convictions, following a jury trial, for two counts of grand theft of a motor vehicle. In his sole assignment of error, Dettwiller contends that his convictions are not supported by sufficient evidence and are against the manifest weight of the evidence. However, after viewing the evidence in a light most favorable to the prosecution, we conclude that any rational trier of fact could have found the essential elements of the crimes proven beyond a reasonable doubt. And after weighing the evidence and all reasonable inferences, considering the credibility of the witnesses after according the requisite deference to the jury's determinations, we conclude that in resolving evidentiary conflicts, the jury did not clearly lose its way or create a manifest miscarriage of justice so that we must reverse its verdict. Accordingly, we overrule the assignment of error and affirm the trial court's judgment.

## I.  FACTS AND PROCEDURAL HISTORY

**{¶2}**   The Highland County grand jury indicted Dettwiller on two counts of grand theft of a motor vehicle in violation of R.C. 2913.02(A)(1), fourth-degree felonies. He pleaded not guilty and the matter proceeded to a jury trial.

**{¶3}**   Jami Green, Dettwiller's aunt, testified that her mother, Amanda Kellis, owns a group home in Greenfield, Ohio, for developmentally disabled women.  Green resides there with Kellis and helps care for the women.  On December 5, 2020, Dettwiller called Green and had her pick him up and bring him to Kellis's home.  He visited with Green and Kellis for a few hours and left around 8:30 or 9:30 p.m., exiting through the front door. The next morning, Kellis woke Green up because Kellis's black Dodge Caravan was missing.  Green testified that there are multiple sets of keys for the van, and usually one or two sets are kept on a coat rack by the front door.  Green testified that no keys were on the coat rack that morning but acknowledged she did not see Dettwiller take them or check the keys when he left the night before.  On December 14, 2020, Green spotted the van parked in Hillsboro, Ohio.  She flagged down an officer and let him know the van had been stolen.  The van was returned to Kellis but went missing again later that month. It was returned a second time along with a set of keys.  At some point, two other sets of keys were found in Kellis's home.

**{¶4}**   Amanda Kellis, Dettwiller's grandmother, testified that she does not drive but became the owner of her husband's black Dodge Caravan in 2018 when he died. Kellis identified State's Exhibit 2 as being a photograph of her van.  She testified that in early December 2020, Dettwiller visited her home and left around 8:30 or 9:00 p.m.  He had not used her van before and did not request her permission to use it before he left.

The next morning, Kellis noticed that the van was missing from the front of the house and that the keys for it were missing from the coat rack where they are kept.  Kellis testified that there are two sets of keys to the van that work, one set that has "never been programmed," and one set that does not work. Kellis was not sure when she had last seen the keys.  Kellis contacted the police and reported the van missing. Later that month, the van was found and returned to her, but no keys were returned with it.  When asked whether Dettwiller visited her again toward the end of December, Kellis testified that "[h]e came earlier in the month and got his clothes that were there and his Christmas [sic], but I didn't see him."  On December 21, 2020, she noticed the van was missing again and contacted the police.  She did not give Dettwiller permission to use the van that day. Later, the van was found and returned to her with a set of keys which had been missing since December 5, 2020.  Kellis "couldn't say" who took the van. However, when asked if she had given law enforcement any indication of who she thought had taken the van, she testified that Dettwiller was "the only one that I could think of."

{¶5}  Officer Dylan Tharp of the Hillsboro Police Department testified that on December 14, 2020, a female flagged him down regarding a stolen van.  He ran the tags and confirmed the van had been reported stolen by the Greenfield Police Department. He did not locate any keys in or around the van but did not search the van or inventory its contents.  He identified State's Exhibit 2 as being a photograph of the van he recovered.

{¶6}  Trooper James Brooks of the Ohio State Highway Patrol testified that on December 25, 2020, around 11:00 a.m., he observed a black Dodge Caravan which matched the description of a vehicle reported stolen by the Greenfield Police Department.

He followed the van and saw it turn into a private drive. Trooper Brooks ran the registration and confirmed the van was the stolen vehicle. He saw Dettwiller exit the vehicle, ordered him to get down on the ground, and handcuffed him. Trooper Brooks found a key fob on the ground where this occurred. Trooper Brooks identified State's Exhibit 2 as being a photograph of the van he recovered.

{¶7} Sergeant Mike Fryer of the Greenfield Police Department testified that on December 6, 2020, he responded to a call about a suspected stolen vehicle. He spoke with Kellis and Green who indicated a Dodge Caravan had been stolen. Someone told him to be on the lookout for Dettwiller. Sergeant Fryer entered the van into the Law Enforcement Automated Data System ("LEADS") as stolen. He reviewed video footage Green had from a Ring doorbell which showed the van leaving the area by the home but not the driver. Sergeant Fryer testified that he was on patrol the night the van was taken and had seen a man matching Dettwiller's description—a white male with light hair—in the van. Sergeant Fryer did not investigate at that time as he had no reason to believe the van was being stolen. On December 18, 2020, a patrol officer notified Sergeant Fryer that the van was back where it belonged, and Sergeant Fryer confirmed that fact and learned the van had been removed from LEADS. On December 21, 2020, Sergeant Fryer received another call from Green about the van and reentered it in LEADS as stolen. Later, he learned Dettwiller had been arrested with the van and that a key had been recovered. Kellis verified it was a key reported missing at the time of the first theft.

{¶8} Patrolman Mark Hamilton of the Greenfield Police Department testified that on December 29, 2020, he transported Dettwiller to jail after court. Dettwiller was confused about why he had been charged with two counts of theft for stealing the same

vehicle and thought that was double jeopardy. Patrolman Hamilton explained that Dettwiller had been charged with two counts because the vehicle had been taken on two different occasions and that was not double jeopardy. Dettwiller said, "That's bullshit."

{¶9}    The jury found Dettwiller guilty on both counts, and the trial court sentenced him. This appeal followed.

## II.  ASSIGNMENT OF ERROR

{¶10} Dettwiller assigns one error for our review:  "The verdict was against the sufficiency of the evidence as well as against the manifest weight of the evidence."

## III.  LAW AND ANALYSIS

{¶11} In his sole assignment of error, Dettwiller contends that his convictions are not supported by sufficient evidence and are against the manifest weight of the evidence. Dettwiller claims that the "only link" between him and the van is that he "was with the van and had keys" to it on December 25, 2020.  He asserts those facts "could potentially give rise to a receiving stolen property charge," but he was not indicted for that offense. Dettwiller suggests that the jury could not reasonably infer from the events of December 25th that he took the van on December 5th or 6th and 21st because "there is quite a bit of time between the two events," there were "multiple sets of keys floating around," "no one knows when the various key sets were where," no one saw him take the keys or the van, and no one saw him at the home on December 21st. He also claims there is no evidence his family considered him a suspect.  Dettwiller maintains that "the jury lost its way in extrapolating backwards from December 25 to conclusions that were not substantially supported."

**{¶12}** In reviewing the sufficiency of the evidence for a conviction, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, *superseded by constitutional amendment on other grounds as stated in State v. Smith*, 80 Ohio St.3d 89, 102, 684 N.E.2d 668 (1997), fn. 4, and following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). "A sufficiency assignment of error challenges the legal adequacy of the state's prima facie case, not its rational persuasiveness." *State v. Anderson*, 4th Dist. Highland No. 18CA14, 2019-Ohio-395, ¶ 13. "That limited review does not intrude on the jury's role 'to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.' " *Musacchio v. United States*, 577 U.S. 237, 243, 136 S.Ct. 709, 193 L.Ed.2d 639 (2016), quoting *Jackson* at 319.

**{¶13}** In determining whether a conviction is against the manifest weight of the evidence, an appellate court

> must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that reversal of the conviction is necessary. In order to satisfy this test, the state must introduce substantial evidence on all the elements of an offense, so that the jury can find guilt beyond a reasonable doubt.
>
> Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence. However, we are reminded that generally, it is the role of the jury to determine the weight and credibility of evidence. " 'A jury, sitting as the trier of fact, is free to believe all, part or none of the testimony of any witness who appears before it.' " *State v. Reyes-Rosales*, 4th Dist. Adams No. 15CA1010, 2016-Ohio-3338, ¶ 17, quoting *State v. West*, 4th Dist. Scioto No. 12CA3507,

2014-Ohio-1941, ¶ 23.  We defer to the trier of fact on these evidentiary weight and credibility issues because it is in the best position to gauge the witnesses' demeanor, gestures, and voice inflections, and to use these observations to weigh their credibility.

(Citations omitted.)  *Anderson* at ¶ 14-15.

**{¶14}** The prosecution may establish the elements of an offense by " 'direct evidence, circumstantial evidence, or both.  Circumstantial and direct evidence are of equal evidentiary value.' "  (Citation omitted in *Fannon*.)  *State v. Fannon*, 2018-Ohio-5242, 117 N.E.3d 10, ¶ 100 (4th Dist.), quoting *State v. Swain*, 4th Dist. Ross No. 01CA2591, 2002 WL 146204, *8 (Jan. 23, 2002).  Circumstantial evidence is " ' "[t]estimony not based on actual personal knowledge or observation of the facts in controversy, but of other facts from which deductions are drawn, showing indirectly the facts sought to be proved." ' "  (Alteration in *Nicely*.)  *State v. Dodson*, 4th Dist. Ross No. 18CA3629, 2019-Ohio-1465, ¶ 13, quoting *State v. Nicely*, 39 Ohio St.3d 147, 150, 529 N.E.2d 1236 (1988), quoting *Black's Law Dictionary* 221 (5th Ed. 1979).

**{¶15}**  R.C. 2913.02(A)(1) states:  "No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services * * * [w]ithout the consent of the owner or person authorized to give consent[.]" "If the property stolen is a motor vehicle, a violation of this section is grand theft of a motor vehicle, a felony of the fourth degree."  R.C. 2913.02(B)(5).

**{¶16}** Although no one witnessed Dettwiler take Kellis's van, there is circumstantial evidence that he knowingly obtained or exerted control over it on two occasions without her consent and with purpose to deprive her of it.  There is evidence that Green gave Dettwiler a ride to Kellis's home on December 5, 2020, and he left around 8:30 or 9:30 p.m.  At some point during the evening, Sergeant Fryer saw a man

in the van who had some of the same features as Dettwiller, i.e., he was white and had light hair. The next morning, Kellis discovered that the van was missing and noticed that no keys for the van were in their usual spot on the coat rack by the front door which Dettwiller had exited. When police recovered the stolen van on December 14, 2020, no keys were recovered with it. The van went missing again on December 21, 2020. There is some evidence Dettwiller went to the home around that time to pick up some items although Kellis did not provide a precise date of when that occurred. Four days after the second theft, Trooper Brooks caught Dettwiller driving the van even though he never had permission to use it. There is evidence that at the time of Dettwiller's arrest, he was in possession of a key fob for the van which had been missing since the first theft.

**{¶17}** Based on the foregoing, any rational trier of fact could have found the essential elements of grand theft of a motor vehicle proven beyond a reasonable doubt with respect to both counts of the indictment. Moreover, in resolving conflicts in the evidence, the jury did not clearly lose its way and create such a manifest miscarriage of justice that reversal of the convictions is necessary. Because sufficient evidence supports the grand theft of a motor vehicle convictions and they are not against the manifest weight of the evidence, we overrule the sole assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED and that appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the HIGHLAND COUNTY COURT OF COMMON PLEAS to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted. The purpose of a continued stay is to allow appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Wilkin, J.: Concur in Judgment and Opinion.


For the Court


BY: _____
       Michael D. Hess, Judge




## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**